# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

                Plaintiff,

        v.

DWAYNE DOLLISON, JR.
KENNETH MARTIN DOUGLAS,

                Defendants.

Case No. 3:18-cr-00066-SLG

## ORDER RE MOTIONS TO VACATE PURSUANT TO 28 U.S.C. § 2255

Before the Court at Dockets 308 and 313 are Motions to Vacate Under 28 U.S.C. § 2255 filed pro se by Defendants Dwayne Dollison, Jr. and Kenneth Martin Douglas.[1]  After the Court appointed counsel for Mr. Dollison and Mr. Douglas, counsel filed an Amended Motion to Vacate at Docket 339.[2]  The Government responded in opposition at Docket 348, to which Defendants replied at Docket 358.[3]  As explained in more detail below, the Court finds than an evidentiary hearing is not necessary to resolve Defendants' motions.

---

[1] *See also* Docket 309-1; Docket 314; Docket 314-1; Docket 315.  The motions are timely.  *See* Docket 350 at 6; 28 U.S.C. § 2255(f).

[2] The amended motion was prepared jointly by Mr. Dollison's attorney and Mr. Douglas's attorney. *See* Docket 340.

[3] *See also* Docket 360 (Suppl. Reply).

# BACKGROUND

After law enforcement discovered illicit drugs, drug paraphernalia, and firearms during a traffic stop, Mr. Douglas and Mr. Dollison were indicted on four counts each: drug trafficking conspiracy, in violation of 21 U.S.C. §§ 841(a), 846; possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (b)(1)(C); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and possession of a firearm as a felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).[4]

At trial, Alaska State Trooper Tyler Langford testified that, on September 16, 2017, he initiated a traffic stop of an SUV around 4 a.m. on the highway near Fairbanks, Alaska, because the vehicle was speeding.[5] Mr. Dollison was driving the SUV; Mr. Douglas was the sole passenger.[6] A sedan that had been driving in tandem with the SUV also stopped.[7] Kelly Wylie was driving the sedan and Cassey Stricklin was a passenger.[8] Ms. Wylie informed the officer that the car was a rental; she produced the rental receipt, which showed that the sedan had been rented by Mr. Douglas.[9] Mr. Douglas and Mr. Dollison initially denied that they

---

[4] Docket 99 (First Superseding Indictment).

[5] Docket 209 at 63-65.

[6] Docket 209 at 68-69.

[7] Docket 209 at 65-66.

[8] Docket 209 at 74.

[9] Docket 209 at 75.

Case No. 3:18-cr-00066-SLG, *United States v. Dollison, et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 2 of 22

Case 3:18-cr-00066-SLG   Document 368   Filed 09/11/24   Page 2 of 22

knew the women in the sedan and denied that they were affiliated with the sedan.[10]

Mr. Douglas consented to a search of the SUV; the trooper did not find any

contraband.[11] The women consented to a search of the sedan; the trooper found

a digital scale, "a cook spoon," and syringes, a few of which were loaded with a

brown substance that Trooper Langford suspected was heroin.[12] During the traffic

stop, Trooper Langford learned that Mr. Dollison was on federal probation for a

drug conspiracy conviction and that Mr. Douglas was on state probation.[13] Trooper

Langford arrested Ms. Wylie and impounded the sedan.[14]

On September 17, 2017, Trooper Langford applied for a search warrant to

search the sedan's trunk and the bags found in the trunk.[15] The warrant application

described the traffic stop and that Trooper Langford had found heroin and

numerous syringes in the sedan during the search incident to the traffic stop.[16]

The warrant sought authorization to search for evidence of misconduct involving

drugs.[17] At 2:21 a.m. on September 17, 2017, a state judge issued the search

---

[10] Docket 209 at 78-80, 85, 89-90; Docket 210 at 66.

[11] Docket 209 at 80, 87, 90-91.

[12] Docket 209 at 93-94.

[13] Docket 210 at 45-46.

[14] Docket 209 at 98.

[15] Docket 209 at 99; Docket 307-1 at 1, 7, 9. The pages of the warrant were filed and docketed out of order.

[16] Docket 307-1 at 6-7.

[17] Docket 307-1 at 6, 9.

Case No. 3:18-cr-00066-SLG, *United States v. Dollison*, *et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 3 of 22

Case 3:18-cr-00066-SLG   Document 368   Filed 09/11/24   Page 3 of 22

warrant.[18]  Trooper Langford testified that at the time he stopped the vehicles, he was unaware that there was a tip provided to federal law enforcement that a pair of cars were driving to Fairbanks with drugs or guns, and he did not become aware of that information until after he executed the search warrant on the sedan.[19]

After the warrant was authorized, Trooper Langford searched the impounded sedan.[20]  In the trunk, he found a green duffle bag.[21]  When he "grabbed th[e] green bag and was pulling it forward," he found a softball-sized package containing what Trooper Langford thought to be powder cocaine and a smaller package containing what he believed to be crack cocaine.[22]  Trooper Langford then opened the green duffle bag and observed "the hilt of a silver pistol."[23]  After Trooper Langford found the gun in the green duffle bag, he discontinued the search and "obtained an amended search warrant for weapons, ammunition, receipts, ledges [sic], and documentation of ownership of the firearm."[24]  During his search of the sedan's trunk, Trooper Langford also found a

---

[18] Docket 307-1 at 11.

[19] Docket 209 at 170.

[20] Docket 44 at ¶ 30.  Trooper Langford testified that he worked the night shift.  Docket 209 at 99-100.  While the record does not establish precisely what time Trooper Langford began searching the sedan, the search occurred after 2:21 a.m. on September 17.  *See id.*

[21] Docket 209 at 102-03.

[22] Docket 209 at 103-04.

[23] Docket 209 at 104.

[24] Docket 44 at ¶ 31; *see also* Docket 209 at 110; Docket 307-1 at 5 (showing handwritten amendment to the search warrant).

Case No. 3:18-cr-00066-SLG, *United States v. Dollison, et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 4 of 22

Case 3:18-cr-00066-SLG   Document 368   Filed 09/11/24   Page 4 of 22

red Nike bag with a baggage claim tag bearing Mr. Dollison's name; the bag contained a pistol, cocaine, methamphetamine, and heroin.[25] He also found a laptop in the trunk.[26]

During trial, Trooper Langford relied on reports, one of which was identified with Bates stamps, to refresh his recollection about the specifics of what he found in the sedan's trunk.[27] He also described what he did with the items he found in the sedan, which included assigning property numbers to the items in the Troopers' report writing system, writing a description of the items, and securing the items in a locker.[28]

Troy Clark, an officer with the Anchorage Police Department, testified that he applied for a warrant to search the computer, but that the warrant was denied.[29] During a sidebar, defense counsel indicated that they had not received the denied search warrant application for the computer.[30] The Government responded that it had the warrant application and could turn it over, but that it had not done so previously because the Government did not believe it was relevant.[31] The Court

---

[25] Docket 209 at 108-19.

[26] Docket 209 at 229.

[27] Docket 209 at 105, 107-08, 111, 228-29, 232.

[28] Docket 209 at 120-21.

[29] Docket 210 at 114-15, 137.

[30] Docket 210 at 153.

[31] Docket 210 at 153-54.

ordered the Government to provide the defense with the search warrant application, which the Government did after a brief recess.[32] Defense counsel had an opportunity to cross-examine Officer Clark after he mentioned the denied search warrant, but counsel did not do so.[33]

A jury found Defendants guilty on all charges.[34] Mr. Douglas and Mr. Dollison were each sentenced to 180 months' imprisonment and eight years of supervised release.[35] Defendants appealed their convictions; the Ninth Circuit affirmed.[36] Before the Court are Defendants' pro se § 2255 motions, each raising an ineffective assistance of counsel claim and a Second Amendment challenge to their § 922(g) convictions.[37] Counsel provided supplemental briefing on the ineffective assistance of counsel claim and added a third claim of ineffective assistance for failure to assert a *Brady* violation.[38]

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a district court may "vacate, set aside or correct" a sentence of a federal prisoner that was imposed in violation of the

---

[32] Docket 210 at 155-57.

[33] *See* Docket 210 at 146-53; Docket 211 at 12-39, 44-45.

[34] Docket 173; Docket 173-1.

[35] Docket 248 at 2-3; Docket 251 at 2-3.

[36] *United States v. Douglas*, Case Nos. 19-30258, 19-30260, 19-30261, 2021 WL 3743893, at *1 (9th Cir. Aug. 24, 2021).

[37] *See* Docket 309 at 6-39; Docket 315 at 6-40.

[38] Docket 339 at 12-14 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)).

Case No. 3:18-cr-00066-SLG, *United States v. Dollison*, *et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 6 of 22

Constitution or a law of the United States. On a motion for § 2255 relief, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."[39] "The court may deny a hearing if the petitioner's allegations, viewed against the record, fail to state a claim for relief or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'"[40] If a court determines that relief is warranted, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[41]

## DISCUSSION

### I. Ineffective Assistance of Counsel

In order to succeed on an ineffective assistance of counsel claim, Defendants must satisfy the two-pronged test set forth in *Strickland v. Washington*, which requires them to show both deficient performance of counsel and resulting prejudice.[42] Deficient performance requires a showing that trial counsel's representation "fell below an objective standard of reasonableness" as measured

---

[39] 28 U.S.C. § 2255(b).

[40] *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (quoting *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985)).

[41] 28 U.S.C. § 2255(b).

[42] 466 U.S. 668, 687 (1984).

Case No. 3:18-cr-00066-SLG, *United States v. Dollison*, *et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 7 of 22

Case 3:18-cr-00066-SLG   Document 368   Filed 09/11/24   Page 7 of 22

by "prevailing professional norms."[43] There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[44] To show prejudice, Defendants must prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[45]

### a. Search of Impounded Sedan

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness," a defendant must prove (1) "that his Fourth Amendment claim is meritorious" and (2) "that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."[46]

### i. Time Search Conducted and Inventory of Search

Defendants invoke Rule 41 of the Federal Rules of Criminal Procedure to pursue two challenges to the search warrant for the sedan. First, they assert that Trooper Langford violated Rule 41(e)(2)(A)(ii) and Rule 41(a)(2) because he executed the search warrant outside the hours of 7:00 a.m. and 10:00 p.m. as authorized by the warrant.[47] Second, they assert that the Government failed to

---

[43] *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 668).

[44] *Strickland*, 466 U.S. at 689.

[45] *Id.* at 694.

[46] *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

[47] Docket 309 at 8, 11-12; Docket 339 at 2-3; Docket 307-1 at 10. Defendants argue that such a conclusion can be drawn because the warrant was authorized at 2:21 a.m. and Trooper Langford

Case No. 3:18-cr-00066-SLG, *United States v. Dollison, et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 8 of 22

Case 3:18-cr-00066-SLG   Document 368   Filed 09/11/24   Page 8 of 22

provide Defendants with an inventory of the search in violation of Rule 41(f).[48] However, "[t]he mere fact that evidence obtained by state officers, under a state warrant, based upon violations of state law, is used in a federal prosecution does not invoke the requirements of Rule 41. In such cases the standard is whether the warrant comports with the requirements of the Fourth Amendment."[49]

Here, there is no dispute that the warrant was obtained and executed by a state law enforcement officer, not a federal one. Trooper Langford testified that he was unaware of federal law enforcement's interest in the movements of Defendants when he stopped the vehicles, applied for and obtained the search warrant for the sedan, and searched the sedan. Therefore, the record conclusively demonstrates that the evidence in the sedan was obtained by a state officer under a state warrant and Rule 41 does not apply.

Defendants also maintain that suppression of the evidence found in the sedan is warranted because "[w]hether a search conducted by a state actor is lawful under federal law is dependent, at least in part, on compliance with local practices and procedures."[50] Defendants rely on *United States v. Wanless*, where the Ninth Circuit held that, "to determine whether the evidence secured through

---

testified that he executed the warrant and worked the night shift. Docket 309 at 8-9.

[48] Docket 339 at 8-11.

[49] *United States v. Crawford*, 657 F.2d 1041, 1046 (9th Cir. 1981).

[50] Docket 339 at 5.

Case No. 3:18-cr-00066-SLG, *United States v. Dollison*, *et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 9 of 22

Case 3:18-cr-00066-SLG    Document 368    Filed 09/11/24    Page 9 of 22

the inventory searches of the vehicles . . . is admissible in federal court, [courts] must determine whether the searches were conducted in accordance with the standard procedures" of the state law enforcement agency that conducted the search.[51]   However, *Wanless* concerned an inventory search, which is an exception to the warrant requirement of the Fourth Amendment.[52]   An inventory search is not at issue here; Trooper Langford secured a search warrant before searching the impounded sedan.[53]   Defendants also cite Alaska case law regarding exclusion of evidence due to noncompliance with Alaska Rule of Criminal Procedure 37.[54]   However, "evidence seized in compliance with federal law is admissible without regard to state law,"[55] and therefore, as noted above, the relevant standard is whether the warrant and the associated search complied with the Fourth Amendment.

Beyond arguing that the search was conducted in violation of federal and Alaska rules, Defendants do not substantively argue that the search violated the Fourth Amendment.[56]   The Fourth Amendment provides that the government shall

---

[51] *United States v. Wanless*, 882 F.2d 1459, 1463 (9th Cir. 1989); Docket 339 at 5.

[52] *Wanless*, 882 F.2d at 1462; *United States v. Anderson*, 101 F.4th 586, 591 (9th Cir. 2024) (en banc).

[53] Defendants Supplemental Brief in Reply also cites a case concerning an inventory search, which is similarly inapposite.  Docket 360 at 2-3.

[54] Docket 339 at 5-7

[55] *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1374 (9th Cir. 1987).

[56] *See* Docket 309 at 7-12; Docket 339 at 2-7; Docket 358 at 2-4.

Case No. 3:18-cr-00066-SLG, *United States v. Dollison*, *et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 10 of 22

not violate "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."[57] "The test of what is necessary to execute a warrant effectively is reasonableness."[58] When examining whether a warrant was executed reasonably, "it is proper to consider both the purpose disclosed in the application for a warrant's issuance and the manner of its execution."[59] "This is because 'the standard of reasonableness embodied in the Fourth Amendment demands that the showing of justification match the degree of intrusion.'"[60] A court must examine the "totality of the circumstances to determine whether a given search was reasonably executed."[61]

Here, Trooper Langford's warrant application stated that he conducted a traffic stop of the sedan and the SUV for speeding; learned that the sedan was a rental car and was driven by Ms. Wiley but was rented by Mr. Douglas; discovered syringes containing a brown substance that he believed to be heroin and other drug paraphernalia after Ms. Wiley consented to a search of the sedan; opened the trunk and observed several bags in the trunk; and impounded the sedan.[62]

---

[57] U.S. Const. amend. IV.

[58] *San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005) (internal quotation marks omitted).

[59] *Id.* (quoting *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978)).

[60] *Id.* (quoting *Berger v. New York*, 388 U.S. 41, 70 (1967) (Stewart, J., concurring)).

[61] *United States v. Combs*, 394 F.3d 739, 743 (9th Cir. 2005).

[62] Docket 307-1 at 9, 6-7.

Case 3:18-cr-00066-SLG   Document 368   Filed 09/11/24   Page 11 of 22

Trooper Langford's warrant application indicated that he believed that the sedan contained heroin and sought a search warrant to search the trunk and all bags in the trunk for evidence of misconduct involving a controlled substance in the fourth degree.[63]  The application also indicated that Trooper Langford knew that Mr. Dollison was on federal probation for a drug conspiracy conviction and Mr. Douglas was on state probation for misconduct involving a controlled substance in the third degree.[64]

After the state judge granted the search warrant, Trooper Langford searched the sedan.  The sedan was owned by a rental company; it was secured on Alaska State Trooper property.[65]  Defendants maintain that the record suggests that the search was conducted outside the hours listed on the search warrant because Trooper Langford testified that he worked the night shift, and the warrant was authorized just after 2:00 a.m.  Defendants also maintain that no inventory of the search was completed or provided to Defendants.[66]

The Court finds that, even assuming that Defendants' factual assertions are correct, the execution of the search warrant was reasonable and did not violate the Fourth Amendment upon consideration of the totality of the circumstances.  The

---

[63] Docket 307-1 at 9, 6-7.

[64] Docket 307-1 at 6.

[65] Docket 307-1 at 7.

[66] At trial, Trooper Langford's testimony indicated that there was a record of what was seized in the search of the sedan.  *See* Docket 209 at 105, 107-08, 111, 120-21, 228-29, 232.

Case No. 3:18-cr-00066-SLG, *United States v. Dollison*, *et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 12 of 22

justification for the search provided in the warrant application was to search the trunk and bags contained within the trunk for evidence of misconduct involving a controlled substance, evidence of which Trooper Langford had already discovered during his search of the sedan after Ms. Wiley consented. The degree of intrusion here was minimal. The sedan was on Alaska State Trooper property and did not require entering a home or detaining anyone. It was reasonable for Trooper Langford to conduct the search during his shift, and it made no difference that the warrant was executed outside the hours listed on the warrant because the sedan was in the custody of law enforcement. And Defendants received records indicating the evidence that Trooper Langford seized from the sedan. Therefore, the Court finds that "the showing of justification match[es] the degree of intrusion" and the search of the sedan complied with the Fourth Amendment.[67]

### ii. Amended Search Warrant

Defendants contend that "the warrant was clearly amended outside the usual and proper course of judicial proceedings."[68] They base this allegation on "Trooper Langford's declaration and testimony," which they assert indicates that "while he was executing the search warrant he found a firearm and had the search warrant amended to allow him to search for weapons, ammunition, receipts,

---

[67] *San Jose Charter of the Hells Angels Motorcycle Club*, 402 F.3d at 971 (citation omitted); *see also* Docket 348 at 14-16.

[68] Docket 309 at 8.

Case No. 3:18-cr-00066-SLG, *United States v. Dollison, et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 13 of 22

Case 3:18-cr-00066-SLG    Document 368    Filed 09/11/24    Page 13 of 22

ledgers, and documentation regarding ownership of a weapon (pistol)."[69]    In contrast, the Government characterizes the record as showing that Trooper Langford "permissibly and properly recontacted the magistrate to amend the search warrant to include firearms and ammunition.  The magistrate signed off on this amendment around 2:21 a.m. on September 17 . . . ."[70]

Defendants fail to explain what procedure Trooper Langford was required to follow in seeking an amended search warrant and how he failed to comply with any such process.[71]   It appears that Defendants' concern with the amended warrant arises from the handwritten amendment and the lack of clarity around whether a magistrate judge expressly granted the amendment.[72]  However, even if the amendment was "amended outside the usual and proper course of judicial proceedings," the guns and ammunition were admissible on a ground independent from the warrant: the plain view doctrine.[73]

"It is well established that under certain circumstances the police may seize evidence in plain view without a warrant."[74]  In order for Trooper Langford's seizure

---

[69] Docket 309 at 10.  Similarly, counsel was not ineffective for allegedly failing to provide a copy of the search warrant to Defendants because the Court finds that the Fourth Amendment challenges raised by Defendants to the search of the sedan are meritless.  *See* Docket 339 at 7-8.

[70] Docket 348 at 16-17.

[71] *See* Docket 309 at 8-12.

[72] *See* Docket 307-1 at 1, 9, 6-7, 4-5, 10-11.

[73] *See* Docket 309 at 8-12.

[74] *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971).

of the guns to fall under the plain view exception: (1) the guns must have been in plain view, (2) Trooper Langford must have had a lawful right of access to the guns themselves, and (3) the guns' incriminating character must have been readily apparent.[75] Probable cause is required in order for the government to properly invoke the plain view doctrine.[76] "An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character."[77]

As described above, Trooper Langford's search of the sedan was appropriate and consistent with the terms of the initial search warrant; he had a lawful right to search the sedan's trunk and the guns were in plain view during his search. Thus, the first two prongs of the test articulated in *Horton* are satisfied here, and the Court turns to whether the guns' "incriminating character" was "immediately apparent."[78]

The Court finds that the incriminating character of the guns was immediately apparent. Trooper Langford knew that Defendants were both on probation, with Mr. Dollison on federal probation for a drug conspiracy conviction. He also found

---

[75] *See Horton v. California*, 496 U.S. 128, 136-37 (1990).

[76] *Arizona v. Hicks*, 480 U.S. 321, 326 (1987).

[77] *Coolidge*, 403 U.S. at 465.

[78] *Horton*, 496 U.S. at 136.

the guns in close proximity to powder and crack cocaine, and he had already discovered heroin and drug paraphernalia in the sedan. He also knew that Defendants initially denied being associated with the sedan or the women in the sedan, but that the sedan had been rented by Mr. Douglas. As such, Trooper Langford had "probable cause to believe [the guns] were associated with criminal activity."[79] As such, even assuming without deciding that the amendment to the search warrant failed to follow proper procedure, the seizure of the guns accorded with the Fourth Amendment pursuant to the plain view doctrine. Therefore, trial counsel was not ineffective in failing to raise these claims because they are without merit.

### b. *Brady* Claim – Warrant to Search Computer

Defendants contend that the Government violated *Brady v. Maryland* by failing to provide Defendants with the denied search warrant application for the computer until the middle of trial and that counsel's failure to assert this *Brady* violation amounted to ineffective assistance.[80] Pursuant to *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or innocence."[81] If the evidence if favorable, "failure to disclose only requires reversal if the evidence

---

[79] *Id.* at 131 n.1.

[80] Docket 339 at 12-14.

[81] *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988).

Case No. 3:18-cr-00066-SLG, *United States v. Dollison*, *et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 16 of 22

Case 3:18-cr-00066-SLG   Document 368   Filed 09/11/24   Page 16 of 22

is material," and "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[82] "*Brady* does not necessarily require that the prosecution turn over exculpatory material *before* trial. To escape the *Brady* sanction, disclosure 'must be made at a time when disclosure would be of value to the accused.'"[83]

Even if this claim was not procedurally defaulted, as the Government contends, and can be properly characterized as an ineffective assistance of counsel claim, there was no *Brady* violation here. In *United States v. Gordon*, the government failed to disclose impeachment evidence against the government's principal witness until after the close of the government's case-in-chief.[84] When defense learned about the evidence, the government turned it over and the court allowed the defense to recall the defendant and the government's principal witness.[85] The Ninth Circuit held that "defendants had substantial opportunity to use the documents and to cure any prejudice caused by the delayed disclosure. Therefore, even assuming the documents were exculpatory and material, there was no due process violation under *Brady*."[86]

---

[82] *Id.* (internal quotation marks and citations omitted).

[83] *Id.* (quoting *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985)).

[84] *Id.*

[85] *Id.*

[86] *Id.*

The same is true in this case. As noted above, the Government provided the search warrant application to the defense while the defense still had an opportunity to cross-examine Mr. Clark about the denied search warrant.[87] Accordingly, the Government's disclosure was made at a time when disclosure could have been of value to the accused, and there was no due process violation under *Brady*. And given the marginal relevance of the denied warrant application to the case, Defendants have not shown that trial counsel's failure to question the witness about the denied application fell below an objective standard of reasonableness; nor have they shown any probability that the result of the proceeding would have been different had the jury learned of the denied warrant application for the computer.

In sum, because the Court finds that Defendants have not proven that their Fourth Amendment or *Brady* claims are meritorious, they have not established deficient performance of counsel under *Strickland*.[88] The Court therefore denies relief on Defendants' § 2255 ineffective assistance of counsel claims.

## II. Second Amendment – Challenge to Convictions After *Bruen*

Defendants challenge their convictions pursuant to 18 U.S.C. §§ 922(g)(1), 924(a)(2) for possessing firearms and ammunition after being convicted of a

---

[87] *See* Docket 210 at 155-57; Docket 211 at 12-39, 44-45.

[88] 466 U.S. at 687.

Case No. 3:18-cr-00066-SLG, *United States v. Dollison*, *et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 18 of 22

felony.[89]  They rely on *New York State Rifle & Pistol Ass'n v. Bruen*.[90]  Before *Bruen*, in *District of Columbia v. Heller*, the Supreme Court struck down a District of Columbia law banning possession of firearms by homeowners, finding that the Second Amendment protects the individual right to bear arms.[91]  The Supreme Court noted that the right is not unlimited and that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" which was "presumptively lawful."[92]  Subsequently, in *McDonald v. City of Chicago*, the Supreme Court stated that *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'"[93]

In *Bruen*, the Supreme Court explained that the two-step means-ends scrutiny applied by the circuit courts was not supported by *Heller* and clarified the proper analysis to determine the constitutionality of a law implicating Second Amendment rights.[94]  But *Bruen* did not alter *Heller*'s statement that the prohibition of firearms by felons is "longstanding" and "presumptively lawful."[95]  Indeed, the

---

[89] Docket 309 at 13-33.

[90] 597 U.S. 1 (2022).

[91] 554 U.S. 570, 595, 636 (2008).

[92] *Id.* at 626, 627 n.26.

[93] 561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. at 626).

[94] *See Bruen*, 597 U.S. at 20-24.

[95] *Heller*, 554 U.S. at 626-27 & n.26.

Case No. 3:18-cr-00066-SLG, *United States v. Dollison, et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 19 of 22

Case 3:18-cr-00066-SLG   Document 368   Filed 09/11/24   Page 19 of 22

*Bruen* majority noted that its holding was "[i]n keeping with *Heller*."[96]   Justice Kavanaugh, joined by Chief Justice Roberts, stated that *Bruen* does not disturb what the Court said in *Heller* about the restrictions imposed on possessing firearms, namely the "longstanding prohibitions on the possession of firearms by felons."[97]  Justice Alito stated in his concurrence: "Nor have we disturbed anything that we said in *Heller* or *McDonald*."[98]   Justice Breyer, joined by Justices Kagan and Sotomayor, stated that *Bruen* "cast[s] no doubt on" *Heller*'s treatment of laws prohibiting firearms possession by felons.[99]

Before *Bruen*, in *United States v. Vongxay*, the Ninth Circuit upheld the constitutionality of § 922(g)(1).[100]   The *Vongxay* court held that *Heller* "[did] not render § 922(g)(1) unconstitutional," and that a consensus of case law indicated that, "even given the Second Amendment's individual right to bear arms, felons' Second Amendment rights can be reasonably restricted."[101]

While *Bruen* clarified the Second Amendment analytical framework, nothing in *Bruen* indicates that the Supreme Court repudiated its earlier pronouncements that the Second Amendment's protections do not extend to felons.  Indeed, *Bruen*

---

[96] *Bruen*, 597 U.S. at 17.

[97] *Id.* at 81 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626-27).

[98] *Id.* at 72 (Alito, J., concurring).

[99] *Id.* at 129 (Breyer, J., dissenting).

[100] 594 F.3d 1111, 1118 (9th Cir. 2010).

[101] *Id.* at 1115, 1117.

Case No. 3:18-cr-00066-SLG, *United States v. Dollison*, *et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 20 of 22

did not overrule the precedents on which *Vongxay* relied and, given the *Bruen* court's careful intent to preserve *Heller*, its holding is not "clearly irreconcilable" with *Heller*, *Vongxay*, or other pre-*Bruen* Ninth Circuit cases that have relied on *Heller*'s "presumptively lawful" language to uphold the constitutionality of felon disarmament laws.[102] As such, *Vongxay* remains binding precedent on this Court, and therefore the Court denies § 2255 relief as to Defendants' convictions pursuant to §§ 922(g)(1).[103]

The Court also finds that no hearing is necessary as to any claims presented in Defendants' motions, as Defendants' claims are based on facts in the record, including trial testimony, and the record conclusively shows that Defendants "fail to state a claim" for § 2255 relief.[104]

---

[102] Ninth Circuit precedent is only "effectively overruled" when "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc); *see also Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) ("The clearly irreconcilable requirement is a high standard. . . . [I]t is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent." (internal quotation marks and citations omitted)).

[103] Several months ago, a three-judge panel of the Ninth Circuit held that, under the framework set out in *Bruen*, the Government failed to show that § 922(g)(1) comported with the Second Amendment as applied to the defendant—who had a nonviolent felony conviction—and the panel vacated the defendant's § 922(g)(1) conviction. *United States v. Duarte*, 101 F.4th 657, 662, 676-77 (9th Cir.), *vacated*, 108 F.4th 786 (9th Cir. 2024). However, the Ninth Circuit subsequently granted rehearing en banc in that case and vacated the opinion by the three-judge panel. 108 F.4th at 786. Further, the Supreme Court recently upheld the constitutionality of 18 U.S.C. § 922(g)(8), which prohibits individuals subject to a domestic violence restraining order from possessing a firearm. *United States v. Rahimi*, 144 S. Ct. 1889, 1903 (2024) ("An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment.").

[104] *McMullen*, 98 F.3d at 1159; *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) (finding no evidentiary hearing necessary where the court had transcript of the plea hearing and the documentary record).

Case No. 3:18-cr-00066-SLG, *United States v. Dollison*, *et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 21 of 22

Case 3:18-cr-00066-SLG   Document 368   Filed 09/11/24   Page 21 of 22

Therefore, the Court **DENIES** Defendants' motions pursuant to 28 U.S.C. § 2255 at Docket 308, Docket 313, and Docket 339. The Clerk of Court shall enter final judgments accordingly. The Court further finds that Defendants have not made the requisite substantial showing of the denial of a constitutional right; therefore, a certificate of appealability will not be issued by this Court.[105] Defendants may request a certificate of appealability from the Ninth Circuit Court of Appeals.

DATED this 11th day of September, 2024, at Anchorage, Alaska.

*/s/Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[105] *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (certificate of appealability may be granted only if applicant made a "substantial showing of the denial of a constitutional right," i.e., a showing that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotations and citations omitted)).

Case No. 3:18-cr-00066-SLG, *United States v. Dollison*, *et al.*
Order Re Motions Pursuant to 28 U.S.C. § 2255
Page 22 of 22

Case 3:18-cr-00066-SLG   Document 368   Filed 09/11/24   Page 22 of 22